Argued October 29, reversed December 19, 1956

# PRYSE v. PRYSE
### 305 P. 2d 392

*Clifford B. Olsen* argued the cause for appellant. On the brief were Wilson and Olsen, John Day.

*Roy Kilpatrick* argued the cause for respondent. On the brief were Lytle, Kilpatrick and Schroeder, Canyon City.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, PERRY and McALLISTER, Justices.

LUSK, J.

The defendant has appealed from a decree granting his wife a divorce.

The complaint charged cruel and inhuman treatment and personal indignities rendering plaintiff's life

burdensome. The specific grounds alleged and the record with respect to each of them follow:

"A. That the defendant has refused to support plaintiff." No proof.

"B. That the defendant has persistently allowed the family bills to become delinquent for the sole purpose of annoying and harassing plaintiff." The plaintiff testified that the grocery bill would go unpaid for several months at a time, that it got pretty high, and the creditor said something about it and she wrote a check in payment on their joint account, and the defendant "had it cancelled." Sometimes the light bills would be permitted to run until they had a delinquent notice. There is no evidence that the defendant allowed the bills to become delinquent for the purpose of annoying and harassing plaintiff. At the time of the trial all bills had been paid except that the taxes on their home had become delinquent.

"C. That the defendant has repeatedly told plaintiff all manner of falsehoods." Plaintiff testified that in 1940, 15 years before the complaint in this suit was filed, the defendant told her he was going to have his car fixed, that he did not return home until 11:00 o'clock at night, and that he had not been to the garage where the repair work was supposed to be done. She further testified that several times defendant said he had gone to a party, and several months later he didn't know anything about the party.

"D. That the defendant has openly consorted with another woman in Prairie City to the extent that his conduct became the source of community knowledge." The plaintiff testified that the defendant took a certain woman to clubs, bought dinner for her and her sister, and came home and told the plaintiff that he didn't

know it cost so much to eat out. She said she had seen him alone with this other woman many times in 1954, a year before she filed her complaint. The defendant testified that the woman in question, who was the sister of a married woman of his acquaintance, was interested in buying a piece of property and building a home, and that he, being a carpenter by trade, was trying to get the building job; and that, as a part of this project, he bought her a sandwich and a glass of milk on two different occasions and that her sister was along; and on another occasion he and this woman and her sister "went in the club and had a drink." According to the defendant, that was the extent of his association with the woman, and there is no evidence that his conduct in this regard became a matter of community knowledge.

"E. That the defendant caused plaintiff's name to be removed from the joint bank account for the sole purpose of embarrassing her." The parties had maintained the joint bank account for 23 or 24 years. Defendant caused the plaintiff's name to be removed from the account about the time this suit was started. There is no evidence that it was done for the purpose of embarrassing her.

"F. That the defendant has repeatedly cursed and abused plaintiff." Her testimony was that "he used terrible language" and "he cursed and swore and used dirty language," but she did not testify to what he said.

"G. That the defendant has gambled away large sums of money and yet has refused to assist his boys in their education or to provide them with spending money in the service." The plaintiff testified that he didn't help the boys in school, and, if the children needed anything and she asked him about it, he

answered "Oh, well, you get it" or "Let them get it themselves." She further testified "Then he would go to the pool halls all night; sometimes not come back until 5:00 o'clock in the morning," and that he told her that he was gambling, and, further, that he never lost. According to defendant's testimony, he occasionally played a game of penny ante poker, and sometimes lost small sums. The parties raised a family of three boys, one of whom was in the Army at the time of the trial and another living in John Day. The third son was accidentally killed while this suit was pending. All three received a high school education. The defendant refused to pay the expense of a college education for the boys, and thought that if they wanted to go to college they should work their way through.

■ The evidence shows that the parties were married in 1933, divorced in 1937, and almost three years later were remarried. Mrs. Pryse has worked during all her married life. She kept her earnings in a separate bank account, while the defendant's went into a joint account. Their combined earnings never exceeded $6,500 before taxes in any one year, and in most years fell considerably below that amount. They owned a home worth $10,000 or $12,000, but were never able to accumulate any money. In that financial situation defendant's refusal to pay for a college education for their sons is understandable. It could scarcely be found to be cruel and inhuman treatment of the plaintiff in any event.

■ Plaintiff has not shown that she is entitled to a divorce. The circuit judge so expressed himself in an oral opinion at the conclusion of the testimony in which he said that Mrs. Pryse's testimony is, "to a great extent, the figment of her own imagination" and that she was "rather desperately searching her memory

for things that have gone along during her marriage to accuse her husband." He attributed their marital difficulties to "Mrs. Pryse's nervousness and instability at the present time."

The charges of misconduct in the complaint are at the best tenuous. But, such as they are, the plaintiff's evidence in support of them was so unsatisfactory as to evoke the comments of the judge which we have quoted. The only possible conclusion is that the decree must be reversed. If it were permitted to stand there would be little, if anything, left of the law of this state which prescribes the grounds upon which a divorce may be granted. See *Guinn v. Guinn*, 188 Or 554, 217 P2d 248.

The decree is reversed, neither party to recover costs.